**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

UNITED STATES OF AMERICA :
                         :
v.                       :          Civil Action No. 2:07cv156
                         :          Criminal Action No. 2:05cr17
CRAIG LAMONT BROWN,      :
                         :
          Defendant.     :
_____:

**OPINION AND ORDER**

On March 26, 2007, Petitioner Craig Brown ("Petitioner" or
"Brown") filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set
Aside, or Correct Sentence by a Person in Federal Custody (the
"habeas petition") (Docket No. 244), consisting of Grounds A
through H.  By Memorandum Order dated August 9, 2007, the Court
denied all claims for relief except Grounds C and D.  The
Government responded to those Grounds and Petitioner subsequently
filed a Reply.

In Ground C, Brown claims that his trial attorney, Bruce
Sams, failed to: (1) inform the Court at sentencing that
Assistant United States Attorney Michael Moore had reneged on his
promise to file a Motion for Downward Departure; (2) object to
the Court's unnoticed, upward variance; and (3) object to the
unreasonableness of his sentence.  Brown contends that each of
those omissions denied him the effective assistance of counsel.
In Ground D, Brown raises another ineffective assistance of

counsel claim, this time based on Mr. Sams's alleged failure to "investigate and resolve disputed facts concerning [P]etitioner's role in [the] offense." (Docket No. 244 at 8.)

After considering the arguments contained in both parties' briefs, the Court **DENIES** Grounds C and D.  (Docket No. 244.)[1]

## I.  Section 2255 - Legal Principles

Section 2255 is designed to correct fundamental constitutional or jurisdictional errors, which would otherwise "inherently result[] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979).  For a court to vacate, set aside or correct a sentence under section 2255, a petitioner must prove that one of the following occurred: (1) that his sentence was imposed in violation of the Constitution or laws of the United States; (2) that the Court was without jurisdiction to impose such a sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255 ¶ 1.

A petitioner bears the burden of proving his grounds for collateral review of his sentence by a preponderance of the evidence.   Jacobs v. United States, 350 F.2d 571, 574 (4th Cir.

---

[1] Because the Court previously described the facts of this case in its August 9, 2007 Memorandum Order (Docket No. 251 at 2-5), there is no need to repeat them here.

1965); <u>Hall v. United States</u>, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).  The Court may decide a section 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255 ¶ 2.  A district judge may also deny a section 2255 motion without a hearing when the motion states only "legal conclusions with no supporting factual allegations." <u>Sanders v. United States</u>, 373 U.S. 1, 19 (1963); <u>see</u> <u>Machibroda v. United States</u>, 368 U.S. 487, 495 (1962) (allegations of "a vague, conclusory or palpably incredible nature" do not raise factual issues which require a full hearing).

To prevail on an ineffective assistance of counsel claim, Petitioner must satisfy two requirements.  First, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." <u>Bacon v. Lee</u>, 225 F.3d 470, 478 (4th Cir. 2000) (<u>quoting</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984)).  Petitioner's counsel is entitled to a "strong presumption" that a trial counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." <u>United States v. Roane</u>, 378 F.3d 382, 404 (4th Cir. 2004) (<u>citing</u> <u>Strickland</u>, 466 U.S. at 689).  Petitioner's counsel's errors must have been so egregious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Roane</u>, 378 F.3d at 404 (<u>citing</u> <u>Strickland</u>, 466 U.S. at 687).  The

3

objectiveness of counsel's assistance is based on counsel's perspective at the time of the alleged error and in light of all of the circumstances, under a "highly deferential" standard. <u>Roane</u>, 378 F.3d at 404-05 (<u>citing</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986); <u>Strickland</u>, 466 U.S. at 689).  Counsel's assistance "is not rendered ineffective because he failed to anticipate a new rule of law."  <u>Lenz v. Washington</u>, 444 F.3d 295, 307 (4th Cir. 2006) (<u>quoting</u> <u>Kornahrens v. Evatt</u>, 66 F.3d 1350, 1360 (4th Cir. 1995)).

Second, Petitioner must demonstrate prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Bacon</u>, 225 F.3d at 478 (<u>citing</u> <u>Strickland</u> 466 U.S. at 694).  In order to do so, Petitioner must show a "probability sufficient to undermine confidence in the outcome."  <u>Roane</u>, 378 F.3d at 405 (<u>citing</u> <u>Strickland</u>, 466 U.S. at 694).  Petitioner's failure to show either of the two requirements renders it unnecessary for the Court to consider both requirements.  <u>Roane</u>, 378 F.3d at 404 (<u>citing</u> <u>Williams v. Kelly</u>, 816 F.2d 939, 946-47 (4th Cir. 1987)).

## II.  <u>Analysis</u>

A.   <u>Ground C</u>

    1.   <u>Failure to Alert the Court of Government's Promise to
File a Motion for Downward Departure</u>

Brown claims that, in exchange for his cooperation with the
Government, Mr. Moore promised to file a Motion for Downward
Departure prior to sentencing.[2]  According to Brown, Mr. Moore
made this representation during a debriefing prior to sentencing,
but after his guilty plea colloquy.  (Docket No. 244 at 9.)

In addition to Petitioner's failure to meet the second prong
of <u>Strickland</u>, <u>see</u> <u>infra</u> p. 6, the Court finds Petitioner's
version of the facts unbelievable.  As recounted by Brown, Mr.
Moore's promise seems bizarrely mistimed.  Brown asserts that the
Government guaranteed a Motion for Downward Departure to entice
him to aid the Government in prosecuting his codefendants.  He
maintains that Mr. Moore first broached the subject of a downward
departure motion after Brown pled guilty.  However, by that point
in time, Petitioner was already obliged to cooperate with the

---

[2] Brown repeatedly uses the term "Rule 35 motion" in his
briefs, even though he claims that Mr. Moore promised a reduction
at sentencing.  (Docket No. 244 at 9.)  A Rule 35 motion is based
on a defendant's substance assistance "<u>after</u> sentencing."  Fed.
R. Crim. P. 35(b)(1)(A) (emphasis added).  If Mr. Moore had
promised to move for a pre-sentence reduction, he would have made
good on his promise by filing a motion pursuant to United States
Sentencing Guidelines ("USSG") § 5K1.1.  Therefore, the Court
will refer to the disputed motion as a Motion for Downward
Departure.

Government.   Pursuant to his Plea Agreement, Brown pledged to:
(1) "testify truthfully and completely at any grand juries,
trials or other proceedings;" (2) make himself "reasonably
available for debriefing and pre-trial conferences as the United
States may require;" and (3) provide all documents, records,
writings, or materials of any kind . . . relating directly or
indirectly to all areas of inquiry and investigation."  (Docket
No. 121 ¶ 10.)   Thus, once Brown entered his plea, Mr. Moore had
no reason, other than largess, to promise a Motion for Downward
Departure.

Additionally, Mr. Sams's account of the debriefing directly
contradicts Brown's.   In an affidavit attached to the
Government's response, Mr. Sams states that "[a]t no time was
there any agreement that the Government would indeed file a
departure motion based on substantial assistance beyond the
language in the plea agreement."  (Sams Aff. ¶ 3.)   Thus, as an
initial matter, Petitioner has not shown that Mr. Moore promised
to file a Motion for Downward Departure.

Nevertheless, even assuming Brown's story is true, his claim
does not satisfy Strickland's second requirement.   Petitioner has
not shown that he was prejudiced by Mr. Sams's failure to inform
the Court of Mr. Moore's retraction.   Nowhere in his habeas
petition does Brown contend that the Government utilized the
guarantee of a Motion for Downward Departure in the context of a

6

quid pro quo.  Cf. United States v. Conner, 930 F.2d 1073, 1075 (4th Cir. 1991) ("[O]nce the government uses its Section 5K1.1 discretion as a bargaining chip in the plea negotiation process, that discretion is circumscribed by the terms of the agreement." (emphasis added)).  As explained above, Brown was already obliged to cooperate with the Government at the time Mr. Moore supposedly promised him a Section 5K1.1 Motion.  Brown does not contend that he voluntarily conferred any additional benefit upon the United States in exchange for that Motion.  Thus, he did not suffer prejudice even if the Government did in fact renege.

The Government did not negotiate away the discretion afforded to it by the Plea Agreement.  That document dictated:

> The parties agree that the United States reserves the right to seek any departure from the applicable sentencing guidelines, pursuant to Section 5K1.1 of the [USSG], or any reduction of section pursuant to Rule 35(b), if, in its sole discretion, the United States determines that such a departure or reduction of sentence is appropriate.

(Docket No. 121 ¶ 13.)  Mr. Sams had "fully explained" the terms of the Plea Agreement to Brown.  (Docket No. 211 at 9.)  Simply stated, Brown understood that he had to cooperate and then hope for the best.

2.  Failure to Object to the Court's Upward Variance

Brown also argues that Mr. Sams's failure to object to the Court's unnoticed, upward variance denied him the effective assistance of counsel.  He premises his argument on Rule 32(h)

7

of the Federal Rules of Criminal Procedure.  That Rule states:

> Before the court may depart from the applicable
> sentencing range on a ground not identified for departure
> either in the presentence report or in a party's
> prehearing submission, the court must give the parties
> reasonable notice that it is contemplating such a
> departure.  The notice must specify any ground on which
> the court is contemplating a departure.

While Rule 32(h) now applies to variances as well as departures,
United States v. Davenport, 445 F.3d 366, 371 (4th Cir. 2006), it
did not affect variances until _after_ Brown's sentencing.

The Court sentenced Brown on October 17, 2005, nine months
after the Supreme Court of the United States decided United
States v. Booker, 543 U.S. 220 (2005).  Booker rendered the
United States Sentencing Guidelines advisory, id. at 226, and in
doing so, created the concept of a variance sentence.  Id. at
259-60; see United States v. Moreland, 437 F.3d 424, 432 (4th
Cir. 2006) (employing the term "variance sentence").  A variance
sentence differs from a traditional guideline departure, in that
the former is based on factors set forth in 18 U.S.C. § 3553(a),
while the latter is "made pursuant to specific guideline
provisions or case law."  Moreland, 437 F.3d 432-33; see United
States v. Hampton, 441 F.3d 284, 288 n.2 (4th Cir. 2006).

In Booker's wake, the United States Court of Appeals for the
Fourth Circuit has interpreted Rule 32(h) as requiring a district
court to give advance notice "of an intent to depart or vary from
the guidelines."  Davenport, 445 F.3d at 371 (emphasis added).

However, the Fourth Circuit did not issue this ruling until April 21, 2006, roughly six months after Brown's sentencing. Thus, when this Court varied upward, Mr. Sams presumably believed that Rule 32(h) meant what it said - a court must give reasonable notice that it is "contemplating . . . a <u>departure</u>" - and nothing more. Fed. R. Crim. P. 32(h) (emphasis added).

Petitioner maintains that, at the time of his sentencing, precedent clearly established that a district court must notify the parties before imposing any non-guidelines sentence. He primarily relies on <u>United States v. Burns</u>, 501 U.S. 129, 136 (1991), where the Supreme Court held that "Congress did not intend district courts to depart from the Guidelines <u>sua sponte</u> without first affording notice to the parties."[3] <u>See also</u> <u>United States v. Spring</u>, 305 F.3d 276, 282 (4th Cir. 2002) (concluding that, if a district court is considering a departure, it must "solicit arguments from counsel before" doing so). Admittedly, the Court framed its holding in <u>Burns</u> broadly. <u>See</u> 501 U.S. at 135-36 ("[T]his Court has readily construed statutes that authorize deprivations of liberty or property to require that the Government give affected individuals <u>both</u> notice <u>and</u> a meaningful opportunity to be heard." (emphasis in original)). Nevertheless, Petitioner's argument misses the mark. The question presented to

---

[3] In 2002, the Supreme Court adopted Rule 32(h), which Congress enacted to codify the <u>Burns</u> decision. <u>See</u> <u>United States v. Vega-Santiago</u>, 519 F.3d 1, 3 (1st Cir. 2008) (en banc).

9

this Court is not whether Burns's holding gave any indication that it could be interpreted to require pre-variance notice. Rather, the question is whether Mr. Sams's failure to understand that Burns stood for such a proposition was objectively unreasonable. The Court holds that it was not.

Even today, reading Burns as requiring pre-variance notice is not self-evident. See, e.g., Vega-Santiago, 519 F.3d at 3 ("The more difficult question is whether the reasoning that prompted Burns[] . . . should be extended without qualification to this new context to establish a judicially created rule requiring automatic advance notice for variances." (emphasis in original)). Indeed, the circuits are split as to whether the advance notice mandated by Burns, and ultimately by Rule 32(h), applies to variances. Compare, e.g., United States v. Cousins, 469 F.3d 572, 580 (6th Cir. 2006) (yes), and United States v. Anati, 457 F.3d 233, 236-37 (2d Cir. 2006) (yes), with United States v. Vampire Nation, 451 F.3d 189, 195 (3d Cir. 2006) (no), and United States v. Long Soldier, 431 F.3d 1120, 1122 (8th Cir. 2005) (no).[4]

Furthemore, without Davenport's guidance, even this Court was unaware that Rule 32(h) mandated advance notice of a potential variance. See also United States v. Blatstein, 482

[4] The Supreme Court will address this issue in United States v. Irizarry, 458 F.3d 1208 (11th Cir. 2006), cert. granted, 128 S.Ct. 828 (2008).

F.3d 725, 733 (4th Cir. 2007) (vacating sentence on appeal because district court did not notify parties before it varied downward); United States v. Carpenter, 204 F. App'x 260, 263 n.2 (4th Cir. 2006) ("Because [Davenport] had not been decided at the time of [defendant's] sentencing, we do not fault the district court for failing to comply with that decision.").

In light of the circuit split on this issue, as well as multiple district courts' inability to decipher Burns's impact on variances, Mr. Sams did not act unreasonably by failing to object to the Court's variance sentence.  To hold otherwise would thrust upon Mr. Sams a duty to "anticipate a new rule of law."  Lenz, 444 F.3d at 307 (quoting Kornahrens, 66 F.3d at 1360); see Honeycutt v. Mahoney, 698 F.2d 213, 217 (4th Cir. 1983).

3.   Failure to Object to the Court's "Unreasonable"
     Sentence

Finally, Petitioner claims that he was denied effective assistance of counsel when Mr. Sams failed to object to the "unreasonableness" of the Court's sentence.  However, in his Plea Agreement, Petitioner waived his right to appeal a sentence that did not exceed the statutory maximum.  (Docket No. 121 ¶ 4.)  The statutory maximums for the Counts to which he plead guilty are five years (Count One, a violation of 18 U.S.C. § 371), thirty years (Count Twenty, a violation of 18 U.S.C. § 1344), and five years (County Twenty-Six, a violation of 18 U.S.C. § 287).

11

The Court sentenced Brown to sixty months imprisonment on Counts One and Twenty-Six, each to run concurrently.  As to Count Twenty, the Court sentenced him to ten years, to run consecutively with the five-year term.  Brown's sentence therefore is below the statutory maximum.  Because Brown waived his right to appeal a sentence within the statutory maximum, Mr. Sams did not act unreasonably by failing to object to the sentence imposed.

B.   Ground D

Finally, Petitioner argues that Mr. Sams unreasonably neglected to investigate Brown's role in the offense.  Petitioner maintains that Mr. Sams could have discovered, through diligent inquiry, that Brown was not the leader of the fraud ring.  As a result, the Court might not have enhanced his sentence by four points.  See USSG § 3B1.1(a) (2007) ("If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the base offense level] by 4 . . . .").

Petitioner's claim fails the second element of Strickland, because he has not shown by a preponderance of the evidence that further investigation of his role in the offense would have affected his sentencing.  The Presentence Investigation Report ("PSR") documents his orchestration of the crime.  Specifically, in paragraph seventy-eight, the probation officer expounded on

12

Brown's critical position in the endeavor:

• Brown was the organizer of a scheme wherein he
recruited individuals to utilize existing bank accounts
or to open accounts for the purpose of depositing and
cashing checks which were stolen or were for accounts
which had been closed or had insufficient funds.

• Brown was . . . introduced to individuals, by Tabitha
Nelson, a codefendant with whom he had a romantic
relationship, to help him perpetuate his check cashing
scheme.

• When making deposits, Brown accompanied his
codefendants to the bank on some occasions. In many
instances, Brown completed the "pay to the order of"
section of the checks which were being deposited into
accounts. Once the checks were deposited and the money
was withdrawn from the accounts, Brown generally split
the money with the codefendant who allowed his or her
account to be used.

• In one instance, Brown persuaded one of his
codefendants to model lingerie and perform other services
for men. The men paid Brown for the codefendant's
services and Brown, in turn, paid the codefendant by
writing her fraudulent checks, which she negotiated
through her bank accounts.

• Brown prepared [fraudulent tax] returns for numerous
individuals, including at least four of his codefendants.
Brown created false Form W-2's, inflating these
individuals['] income, then completing the tax return
with the fraudulent information. Brown then accompanied
individuals to Jackson-Hewitt, where the returns were
filed electronically. In each instance, the individuals
received refunds to which they were not entitled. Brown
charged up to half of the refund for his preparation of
the fraudulent return.

Due to this overwhelming evidence establishing Brown as the

organizer, Mr. Sams advised his client that it would be unwise to

attempt to minimize his participation in the crime. (Sams Aff. ¶

4.) Nevertheless, Mr. Sams rightly left the choice of whether to

object to certain portions of the PSR in Brown's hands.   Id.
Brown ultimately chose not to object to his role in the offense.[5]

In his habeas motion, Brown does not provide evidence that
suggests a marginal level of participation.  He simply claims
that he disagreed with "the language used in the indictment
pertaining to [his] alleged role" (Docket No. 244 at 8.) and
wanted Mr. Sams to investigate further.  Petitioner's naked
allegations do not come close to establishing that his case
probably would have ended differently but for Mr. Sams's supposed
neglect.

The Court therefore holds that, even if Mr. Sams did fail to
investigate Brown's role in the offense, it did not affect the
outcome of the litigation.  An investigation more than likely
would have confirmed the veracity of the information in the PSR –
i.e., the mountain of evidence establishing Brown's extensive
involvement in the fraud ring.[6]  The Court therefore denies

---

[5] Indeed, the Statement of Facts (Docket No. 122) signed by
Brown painted him as the mastermind behind the conspiracy.

[6] In fact, at his sentencing, Brown admitted his leadership
position.  In attempting to determine whether Brown had accepted
responsibility for his actions, Mr. Sams called him as a witness.
The following exchange occurred:

Q.  Do you admit that you would be characterized as the
ringleader/organizer in this matter?

A.  Yes.

Q.  Do you have any question about that?

14

Ground D.

## III.   <u>Conclusion</u>

For the reasons stated above, the Court **DENIES** Grounds C and D, and **DISMISSES** Brown's habeas petition (Docket No. 244).  As this Opinion and Order incorporates the Court's previous Memorandum Order of August 9, 2007 (Docket No. 251), it constitutes a final Order for purposes of appeal.[7]

Petitioner is **ADVISED** that he may appeal this final decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a circuit court of appeals judge or this Court issues a certificate of appealability.  <u>See</u> 28 U.S.C. §

---

A.  No.

Q.  Did you intend to convey to [the probation officer] that you felt that you were not the ringleader/organizer?

A.  No.  That was not my intent.

Q.  And as to the question that – the statement of being equal, what was your intent in how that was phrased? . . .

A.  Well, when I said that we were equal, I was explaining to her or I was attempting to explain to her that all the people that were involved knew what the consequences were, as I stated before, not that I was duping them into something or they didn't know what the consequences were, that was it - not that I wasn't the one who orchestrated it. . . .

(Docket No. 212 at 10.)

[7] All of Petitioner's other pending Motions (Docket Nos. 245, 262, 265, 269) are **DISMISSED** as moot.

2253(c).  A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  Id.  If Petitioner intends to appeal, he must file a Notice of Appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510 within sixty (60) days of the date of entry of this Opinion and Order, or within such extended period as the Court may grant pursuant to Rule 4(a)(5).

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner and to all counsel of record.


**IT IS SO ORDERED**.



_____/s/_____
              Walter D. Kelley, Jr.
         UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 24, 2008

16